# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM A. RICHARDSON, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No.: 2:11-cv-02078-GMN-PAL |
| | ) |
| OPPENHEIMER & CO. INC.; OPPENHEIMER | ) **ORDER** |
| HOLDINGS INC.; OPPENHEIMER ASSET | ) |
| MANAGEMENT, INC.; ALBERT LOWENTHAL; | ) |
| ROBERT LOWENTHAL; GREG WHITE; MARK | ) |
| WEINBERG; DOE DEFENDANTS 1 through 100; | ) |
| ROE CORPORATE DEFENDANTS 1 through 100, | ) |
| | ) |
| Defendants. | ) |
| | ) |

Pending before the Court is Defendants Oppenheimer & Co. Inc., Oppenheimer Holdings Inc., Oppenheimer Asset Management, Inc., Albert Lowenthal, Robert Lowenthal, Greg White, and Mark Weinberg's Motion to Dismiss. Plaintiff William A. Richardson brought this suit alleging that the Defendants violated securities laws in representing that the type of security they were selling him was a liquid investment. Defendants move to dismiss for failure to state a claim, asserting that Plaintiff's Complaint does not plead the particularized facts necessary to meet the higher pleading standards of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act. Additionally, Defendants Albert Lowenthal, Robert Lowenthal, and Greg White move to dismiss for lack of personal jurisdiction. For the reasons discussed below, the Motion to Dismiss is granted.

## I. <u>BACKGROUND</u>

This is a securities fraud case arising out of the systematic failure of the Auction Rate Securities ("ARS") market in February 2008. ARS are long-term bonds and preferred stock with

interest rates or dividend yields that are reset through periodic auctions. (ECF No. 1, ¶ 2.) These periodic auctions also enable investors to easily liquidate their ARS at regular intervals. (Id.) During an auction, potential purchasers bid by stating the minimum interest rate at which they are willing to purchase a quantity of ARS. (Id. at ¶ 34.) The bids are then sorted, high to low, and the lowest interest rate required to sell all of the ARS available at auction—the "clearing rate"—becomes the rate that applies to all of the ARS until the next auction. (Id.) Alternatively, if there are an insufficient number of bids to cover all the ARS offered for sale, the auction fails and the investors must retain their ARS until the next auction. (Id.)

Because of these periodic auctions, ARS were generally regarded as having the same liquidity as a money market fund but offering higher returns. (Id. at ¶ 2.) However, for many years, the success of the auctions had allegedly been dependent on support bids from ARS Underwriters who allegedly purchased large quantities of ARS at each auction to ensure that the auction did not fail, thus preserving the perceived liquidity of the security. (Id. at ¶ 16.) Beginning in 2007, the ARS Underwriters allegedly began to withdraw their support for the auctions and failures began to occur. (Id. at ¶ 44.) This withdrawal of support eventually culminated in the February 2008 systematic failure of the ARS market. (Id. at ¶ 45.)

As early as 2002, Plaintiff William A. Richardson ("Plaintiff") began to invest in ARS on the advice of his financial advisor, Defendant Mark W. Weinberg ("Weinberg"), an employee of Defendant Oppenheimer & Co. Inc. ("Oppenheimer"). (Id. at ¶ 4.) Plaintiff informed Weinberg that he needed to have immediate access to his funds at all times and was consequently looking for a very liquid investment. (Id. at ¶ 5.) Presumably at this time, Weinberg informed Plaintiff about ARS, and allegedly advised Plaintiff that ARS were as liquid and secure as cash, were better than a certificate of deposit or money market account, and that Plaintiff would be able to access his funds when needed. (Id.) Plaintiff alleges that Weinberg, Oppenheimer, and agents of Oppenheimer continued to make similar representations through Plaintiff's last purchase of ARS,

just before the ARS market collapse in February 2008. (Id. at ¶¶ 14, 41, 42, 44, 55, 56, 59, 62, 67, 127.) Additionally, during this time span, Oppenheimer allegedly represented to investors in written materials and uniform sales presentations by employees that "ARS were the same as cash and were highly liquid, safe investments for short-term investment, and suitable for any investor with at least $25,000 of available cash and as little as one week in which to invest." (Id. at ¶ 41.)

However, Plaintiff alleges that these representations were false because ARS were not, in fact, liquid assets, but rather long-term debt instruments. (Id. at ¶ 42.) The liquidity of ARS was only as a result of the ability to easily cash out some or all of one's holdings at the periodic auctions. (Id.) Plaintiff alleges that the high success rate of the auctions was not driven by market demand, but by supporting bids placed by the Underwriters of the auctions. (Id. at 75-85.) In other words, the Underwriters were purchasing large volumes of ARS in each auction to prop up the market. Plaintiff further alleges that Oppenheimer, due to its status as a broker-dealer and its close association with the Underwriters, was privy to material, non-public information regarding both the volume of ARS the Underwriters were purchasing to prop up the auctions and the inventory capacity of the Underwriters. Oppenheimer did not disclose this information. (Id. at ¶ 114.)

This information, plaintiff alleges, gave Oppenheimer advanced knowledge of the market failure since it was able to roughly calculate when the Underwriters would no longer be able to prop up the auctions. (Id. at ¶¶ 37, 40, 95-112.) Plaintiff alleges that, based on the material, non-public information Oppenheimer possessed, it had knowledge that the failure of the ARS market was imminent beginning in 2007 when auction failures first started to occur. Additionally, as the Underwriters began to allow auction failures, plaintiff alleges that Oppenheimer executives received daily status updates about auctions, were aware of the fragility of the market, and discussed the possibility of market failure. (Id. at ¶¶ 47, 60, 62, 113-123.) Plaintiff further alleges that, during this time, executives at Oppenheimer, including Defendants Albert Lowenthal ("A.

Lowenthal"), Robert Lowenthal ("R. Lowenthal"), and Greg White ("White") were offloading their personal holdings of ARS. (Id. at ¶¶ 48-54.) In fact, between the end of 2007 and February 13, 2008, Oppenheimer executives allegedly sold millions of dollars of personal ARS holdings, while $5,800,000 of ARS were purchased by Weinberg for Plaintiff's account. (Id. at ¶¶ 56-57.) Further, Plaintiff claims Defendant A. Lowenthal instructed another Oppenheimer executive not to pass along the information regarding the auction failures to Oppenheimer financial advisors. (Id. at ¶ 114.) Oppenheimer allegedly continued to encourage investment in ARS, continued to represent that ARS were a safe alternative to cash or money market account, and continued to purchase ARS on Plaintiff's behalf. (Id. at ¶ 55.)

When the ARS market collapsed in February of 2008, Plaintiff alleges that his holdings lost liquidity and decreased in value. (Id. at ¶¶ 13, 189.) Plaintiff filed this lawsuit against Defendants alleging violations of §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 77j(b), ("§ 10(b)") and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, ("Rule 10b-5"). Plaintiff also alleges that Defendants Oppenheimer Holdings Inc. and Oppenheimer Asset Management, Inc. are liable for Oppenheimer's Actions as control persons under § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), ("§ 20(a)"). Defendants collectively move to dismiss the complaint, arguing that Plaintiff fails to plead facts with sufficient particularity to satisfy the heightened pleading standards under Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Additionally, Defendants Albert Lowenthal ("A. Lowenthal"), Robert Lowenthal ("R. Lowenthal"), and Greg White ("White") move to dismiss the Complaint against them individually for lack of personal jurisdiction.

## II. <u>PERSONAL JURISDICTION</u>

As a preliminary matter, Defendants A. Lowenthal, R. Lowenthal, and White argue that the assertion of personal jurisdiction by this Court would violate their due process rights because their contacts with the state of Nevada are insufficient to establish personal jurisdiction in this Court.

Because questions of personal jurisdiction generally should be resolved before a discussion of the substance of the case, the Court will address this argument first.

For a court to exercise personal jurisdiction, some statute must authorize it to do so. *See Amba Marketing Sys., Inc. v. Jobar Int'l Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). For state courts, the state's long-arm statute typically provides that authorization. *See, e.g.*, *Baker v. Dist. Ct.*, 999 P.2d 1020, 1023 (Nev. 2000). "By contrast, there is no general federal long-arm statute, so federal courts must look either to the long-arm statutes of the state in which the court sits . . . or to specific federal statutes." *SEC v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citing Fed. R. Civ. P. 4(k)(1)(A) – (D)). Section 27 of the Securities and Exchange Act is such a federal statute, providing for nationwide service of process and consequently, independently authorizing federal personal jurisdiction. 15 U.S.C. § 78aa; *Sec. Investor Prot. Corp. v. Vigman*, 764 F.2d 1309 (9th Cir. 1985).

Authorization under a federal statute notwithstanding, a federal court's ability to exercise personal jurisdiction is still constrained by the Due Process Clause of the Fifth Amendment. These due process restrictions "represent[ ] a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Thus, due process requires that for a court to exercise jurisdiction, the defendant must have minimum contacts with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted). Nonetheless, "[w]here a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Vigman*, 764 F.2d at 1315 (internal quotations omitted). Residency within the United States is sufficient to establish the minimum contacts required for due process in such circumstances. *See Action Embroidery Corp. v. Atl. Embroidery,*

*Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004).

Here, the reach of Nevada's personal jurisdiction is inapplicable. Plaintiff's allegations fall under the Securities Exchange Act, and § 27 of that act authorizes the Court's exercise of personal jurisdiction. Further, all Defendants contesting personal jurisdiction are residents of the United States, and as such have minimum contacts with the United States such that notions of fair play and substantial justice are not offended. Thus, the Court's exercise of personal jurisdiction does not violate the Defendant's due process rights.[1]

## III. FAILURE TO STATE A CLAIM

### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)) "Factual allegations must be enough to rise above the speculative level." *Id*. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the two-step

---

[1] Given Defendants' minimum contacts with the United States, their argument that Nevada is an inconvenient and improper forum is more properly brought as a challenge to venue. *See Vigman*, 764 F.2d at 1316-18. However, not only have Defendants failed to raise a venue argument, § 27 provides that venue is appropriate "wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa(a). Given that Plaintiff alleges his transactions with Oppenheimer took place only at their Nevada office, the venue requirements of § 27 are satisfied.

Page 6 of 14

approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id*. at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. *Twombly*, 550 U.S. at 570.

    **B.**    **Discussion**

Defendants assert that Plaintiff's Complaint does not allege sufficient facts to state a claim for securities violation, especially in light of the heightened standard. As the sufficiency of the §20(a) claim necessarily relies on the 10(b) claim, the Court first analyzes the alleged violations of § 10(b) and Rule 10b-5.

    **i.**    **§ 10(b) and Rule 10b-5**

Section 10(b) of the Exchange Act and its corresponding Rule 10b-5 prohibit the use of fraud or deceit in connection with the purchase or sale of a security. 15 U.S.C. § 77j(b); 17 C.F.R. § 240.10b-5. The elements of a 10b-5 claim are: (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).

Additionally, a securities fraud complaint under § 10(b) and Rule 10b-5 must satisfy the heightened pleading requirements contained in Fed. R. Civ. P. 9(b) and the PSLRA. *Zucco*

*Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-91 (9th Cir. 2009). These heightened pleading requirements are "no small hurdle" for parties alleging securities fraud. *Nat'l Elevator Indus. Pension Fund v. VeriFone Holdings, Inc.*, 704 F.3d 694, 701 (9th Cir. 2009). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This rule requires that claims of fraud be accompanied by the "who, what, when, where, and how" of the conduct charged, *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (*quoting Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)), so that the complaint may not simply "lump multiple defendants together." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011). This requirement ensures that the defendants are on "notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess*, 317 F.3d at 1106 (internal quotations omitted).

Further, the PSLRA requires that "the complaint [ ] specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading . . . ." 15 U.S.C. § 78u-4(b)(1)(B). The PSLRA also provides that the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A).

Defendants argue that Plaintiff's Complaint fails to plead the alleged false or misleading statements with particularity, fails to plead sufficient facts to show a strong inference of scienter, and fails to sufficiently plead reasonable reliance and loss causation. Because the Court agrees that Plaintiff's Complaint does not sufficiently identify the misleading statements, the Court finds that Plaintiff's § 10(b) and Rule 10b-5 claim fails.

Defendants complain of three deficiencies relating to the false or misleading statements and omissions alleged in Plaintiff's Complaint. First, Defendants claim that the allegations in the complaint are "blanket assertions" that fail to detail what statements exactly were made, who

made them, and the time and place of the statement. Second, Defendants challenge that, even as alleged, the statements are not false or at least were not false when made. Finally, Defendants argue that the Complaint contains no allegations that Defendants A. Lowenthal, R. Lowenthal, or White made any false or misleading statements.

The Court agrees that Plaintiff's allegations lack the required specificity to put Defendants on notice of the particular misconduct. First, taken in context, Plaintiff's allegations that Oppenheimer marketed and represented ARS as safe, secure, like cash, or liquid appear to be the conclusions Plaintiff drew from specific statements, rather than the statements themselves. Further, when Plaintiff alleges that Weinberg and Oppenheimer "continued to represent" that ARS were safe it is unclear whether Plaintiff is referencing affirmative statements, his continued understanding that ARS were safe based on Defendants' past and current statements, the Defendants' failure to correct past statements, or simply the fact that Defendants continued to transact in ARS on Plaintiff's behalf based on Plaintiff's communicated desire for liquid investment. As specific statements are lacking, it is impossible for the Court to analyze their alleged falsity. More importantly, the lack of specificity fails to meet the PSLRA's requirement to "specify each statement alleged to have been misleading."

Second, even if Plaintiff's allegations are construed as actual statements, Plaintiff alleges simply that Defendants made the representations at some point during a six-year time span. Given that Plaintiff alleges that Oppenheimer had knowledge about the imminent collapse of the ARS market starting at the earliest in 2007, statements regarding the liquidity of ARS before 2007 would neither be false or misleading, nor be made with the requisite intent to deceive. Consequently, the timing of the statements is especially relevant in this case. Plaintiff's sweeping allegations that Oppenheimer "continued to represent" that ARS were safe during the relevant time period, or allegations that Oppenheimer represented ARS were safe "from [Plaintiff's] first purchase through his last purchases" are lacking in sufficient detail to meet the heightened

pleading standard.

Finally, although Plaintiff occasionally refers to Weinberg as the speaker, many allegations refer simply to Oppenheimer[2] or Opphenheimer's agents. Additionally, the Complaint does not detail any statement made to Plaintiff by Defendants A. Lowenthal, R. Lowenthal, or White.[3] In sum, the Complaint improperly lumps together multiple Defendants, and further obfuscates the specific wrongful conduct for which Plaintiff seeks redress. Consequently, the Complaint does not plead sufficient facts to meet the specificity requirements of Fed. R. Civ. P. 9(b) or the PSLRA and fails to state a claim against the Defendants. Accordingly, Defendants' motion as to this claim is granted.

### ii. § 20(a)

Because Plaintiff has not stated a §10(b) claim, he has not established a primary violation necessary to maintain the § 20(a) claim. *See* 15 U.S.C. § 78t(a). Consequently, Defendants' Motion as to this claim is also granted.

### iii. Leave to Amend

In the Opposition, Plaintiff requests leave to amend the Complaint should the Court grant Defendants' Motion. Defendants oppose this request and urge the Court to dismiss the Complaint with prejudice.

After the time for amendment as a matter of course has expired, a party may amend its

---

[2] The reference to Oppenheimer is made even more confusing because Plaintiff's Complaint details that "[u]nless specifically noted, "Oppenheimer" refers collectively to Defendants Oppenheimer Holdings Inc., Oppenheimer & Co. Inc., and Oppenheimer Asset Management Inc." None of the allegations specifically note which entity made the representation. Thus, taken at face value, the complaint alleges that all three Oppenheimer Defendants represented that ARS were a liquid investment to Plaintiff, even though Plaintiff only alleged transactions were with Oppenheimer & Co. Inc.

[3] Plaintiff's Opposition details that these Defendants are properly before the Court because they sold their personal holdings of ARS before the collapse of the Market and, as management, they generally participated in the omissions made by Oppenheimer. However, as these general actions of these individuals do not state a particularized harm to Plaintiff, they are insufficient to maintain an action against these Defendants individually. Moreover, omissions are only actionable to the extent that they make a statement misleading. *See Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Thus, unless these individuals made specific statements to defendants, their role in the Oppenheimer's omissions is not actionable against them in their individual capacity.

complaint only by leave of the court or by the adverse party's written consent. Fed. R. Civ. P. 15(a)(2). The court has discretion to grant leave and should freely do so "when justice so requires." *Id.*; *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). "Dismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment." *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). Nonetheless, courts may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Defendants argue that Defendant cannot plead additional facts that would cure the Complaint's deficiencies articulated in Defendants' Motion. Because Plaintiff could easily amend the complaint to allege more particularized statements, the Court must analyze the remaining elements of the 10(b) and Rule 10b-5 claim that Defendants complain are deficient to determine if amendment would be indeed be futile.

### 1. Scienter

The PSLRA requires that a securities fraud complaint state particular facts that show the defendant acted with scienter. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005). In the securities fraud context, scienter is the defendant's intention to deceive, manipulate, or defraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313-14 (2007). In determining the sufficiency of a plaintiff's scienter allegation, a court must consider "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation meets the standards." *Id.* at 322-23. "A plaintiff . . . must plead facts rendering an inference of scienter *at least as likely* as any plausible opposing inference." *Id.*

The Court finds that the Plaintiff can adequately plead scienter. Plaintiff alleges that Oppenheimer had specific, non-public information regarding the capacity of the Underwriters to

continue their practice of their support bids. Additionally, as more and more auction failures began to occur, Plaintiff alleges that Oppenheimer executives were selling their personal holdings of ARS while continuing to market and sell ARS to customers. Finally, Plaintiff alleges that White instructed another Oppenheimer executive to not inform the company's financial planners, the points of contact with clients, of the failed auctions which had taken place. All of these facts, taken together, sufficiently give rise to the inference that Oppenheimer knew of the impending failure of the ARS market, but wanted to maintain enough demand to unload personal holdings of ARS securities. This renders an inference of the requisite intent to deceive at least as plausible as any opposing inference.

Additionally, these facts distinguish this case from *Ashland v. Oppenheimer & Co., Inc.*, 648 F.3d 461 (6th Cir. 2011), the case upon which Defendants primarily rely, where the crux of the complaint was that defendant failed to disclose that the success of auctions was primarily dependent on Underwriter support bids. The Court notes that *Ashland* does contain a number of similarities to the instant case, and that many of the omissions plead by Plaintiff are not material or actionable just as in *Ashland*. However, *Ashland* also specifically noted in its review of ARS-related litigation that successful complaints detailed either a defendant's exclusive access to supply and demand information in the ARS market or a defendant's act of propping up the market to unload personal inventories on investors. Although no such facts were alleged in *Ashland*, both scenarios are alleged here.[4] Thus, amendment would not be futile with respect to the scienter element.

/ / /

---

[4] Defendants' reliance on *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) for the proposition that Plaintiff must show Oppenheimer executive's trades are out of line with prior trading practices, is similarly displaced. Under *Zucco*, allegations of executive trading alone are insufficient to support a claim for insider trading. *Id.* at 1005. However, such allegations still present circumstantial evidence of scienter. *Id.* Consequently, when allegations of executive trading are taken collectively with all the alleged facts, the Complaint sufficiently renders an inference of scienter at least as plausible as an opposing inference.

### 2. *Reliance*

To adequately plead the reliance prong, a plaintiff must allege that the misstatements caused the plaintiff to engage in the securities transaction. *In re Daou Sys.*, 411 F.3d at 1025 (citing *The Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999)). In other words, but for the fraud, the plaintiff would not have engaged in the transaction. *Id*. However, reliance must be reasonable in light of the facts of the case. *See Allstate Life Ins., Co. v. Robert W. Baird & Co.*, 756 F.Supp.2d 1113, 1130 (D. Ariz. 2010).

The Court finds that Plaintiff has adequately stated his reliance. The Complaint details that Plaintiff instructed Weinberg that he needed access to his money at any time and consequently needed a liquid investment. Further, Plaintiff alleges that he would not have made the investment had he known of the status of the ARS market immediately preceding its collapse. Plaintiff's reliance on any statements of his financial advisor made after Oppenheimer became aware of the imminent market failure would be reasonable given the prior dealings between the parties and the liquidity that had historically existed in the ARS market. In other words, Plaintiff had no reason to doubt the veracity of Weinberg's advice in late 2007 and early 2008. Consequently, the reliance element is satisfied.

Defendants assert that Plaintiff could not have reasonably relied on the statements of Oppenheimer in making his investments because, as noted in *Ashland*, Oppenheimer had an online brochure warning customers that Oppenheimer was not obligated to make bids to prevent an auction failure. (ECF No. 18.) Defendants' citation to *Ashland* for this proposition is somewhat specious, as *Ashland* was discussing reliance in the context of a state-law promissory estoppel claim. 648 F.3d at 472. Moreover, as discussed previously, the crux of Plaintiff's complaint is not that Oppenheimer failed to disclose simply the Underwriter's practice of support bidding, but rather, that Oppenheimer knew that the ARS market could not sustain itself and hid this fact from its investors while it unloaded its personal holdings. As the facts are dissimilar in

this respect, the *Ashland* analysis is inapplicable.

### 3. *Loss Causation*

Defendants additionally assert that Plaintiff has not properly plead loss causation because the claim only alleges loss due to the collapse of the ARS market, not the Defendants' misstatements. (ECF No. 18.) Although losses due to "the direct intervention of a market collapse" are not actionable, *see, e.g.*, *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 772 (2nd Cir. 1994), the collapse of the ARS market was not an intervening factor in this case, but rather, it was the material omission. In other words, this is not a case where Defendants' misstatements were rendered moot because the market independently and unforeseeably collapsed. Rather, Defendants were conscious of the impending market failure, but withheld information to induce investment from clients and unload its own holdings. Consequently, Plaintiff's allegations adequately plead loss causation.

As it is not clear that an amendment could not save the complaint, dismissal with prejudice would be improper. Consequently, the Court grants Plaintiff leave to amend his Complaint. Plaintiff has **until June 3, 2013** to file his First Amended Complaint.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants Oppenheimer & Co., Inc., Oppenheimer Holdings Inc., Oppenheimer Asset Management, Inc., Albert Lowenthal, Robert Lowenthal, Greg White, and Mark Weinberg's Motion to Dismiss is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to amend his Complaint, provided that Plaintiff's First Amended Complaint is filed **by June 3, 2013**. Failure to comply with this Order will result in **DISMISSAL with prejudice**.

**DATED** this 10th day of May, 2013.

_____
Gloria M. Navarro
United States District Judge